HOPKINS AND MUDGE, EXECUTORS OF HOPKINS, *against* FLEET AND YOUNG, OVERSEERS OF THE POOR, &c.

IN ERROR, from the court of common pleas of *Queen's* county. *Fleet* and *Young*, the defendants in error, as overseers of the poor of the town of *Oysterbay*, brought an action against the plaintiffs in error, as executors of *Thomas Hopkins*, for 25 dollars and 59 cents, laid out and expended for the support and maintenance of a certain slave, belonging to the said *Hopkins*, in his lifetime. The suit was brought under the second section of the act concerning slaves. (Sess. 24. c. 188.) The defendants below pleaded the general issue, and gave notice that they would give in evidence, at the trial, that the slave alluded to in the declaration of the plaintiffs, was the slave of *Hopkins*, in his lifetime, and that the defendants, as his executors, before the expenditure of the money by the plaintiffs, to wit, on the 10th of *August,*

*Where the overseers of the poor of the town of O. gave a certificate in writing "thatthe bearer J. the slave of H. was under the age of 50 years and of sufficient ability to get his living," at the bottom of which was written, "We do hereby manumit the same," and thewhole signed by the overseers, but not*

by the executors of H. to whom the slave belonged; and the certificate was recorded in the office of the clerk of the town, it was held that this certificate, registered at the request of H., was conclusive evidence, to charge the town with the future maintenance of such slave, as a *pauper.*

Whether the slave was duly manumitted or not, as respected his former owner, was a question between the slave and such former owner, with which the town had no concern ; but *it seems* that this was a manumission sufficient to conclude the owner.

1807, manumitted the slave, by a certificate, or writing, for that purpose, and at, or immediately before such manumission, obtained a *certificate*, signed by the overseers of the poor of the town where the defendants resided, or a major part of them, which certificate they caused to be registered in the office of the clerk of the town, &c. At the trial, it was proved that the slave in question, named *Jordan*, belonged to the testator in his lifetime, and that the plaintiffs in error were executors, and that the defendants in error were overseers of the poor, &c. and had expended the sum demanded, as being requisite for the support of the slave, who was unable to maintain himself.

The defendant below then offered in evidence the following certificate in writing: "*Oysterbay*, 10th *August*, 1807. We do hereby certify that the bearer, named *Jordan*, the property of *William Hopkins & Co.* appears to be under the age of fifty years, and of sufficient ability to get his own living.

"We do hereby manumit the same.

(Signed)          "*Daniel Youngs*,        } Overseers of the
                  "*Jacob Van Wreklin*,  } Poor."

This certificate was endorsed as follows: "The within manumission is entered in the records of *Oysterbay* in book I. page 319. per *Jacobus Montfort*, Clerk." The certificate of manumission was not signed by the plaintiffs in error, and was delivered to the town clerk by *William Hopkins*, one of the plaintiffs in error.

This certificate was offered as conclusive evidence of the facts therein contained, and as sufficient to exonerate the executors from all future maintenance of the slave; but the court refused to admit the certificate as evidence.

The defendants below then offered in evidence the will of *Thomas Hopkins*, by which they were appointed his executors, and by which they were empowered to sell and dispose of all his estate, both real and personal; but the court below rejected the evidence. The defendants below then offered to prove, by *parol*, their intention, *bona fide*, to manumit the slave by the said certificate, or writing, but the court rejected the evidence, and charged the jury, that the matters offered in evidence by the defendants below were incompetent and insufficient to bar the plaintiffs' action, and that the jury ought to find a verdict for the plaintiffs below, for the amount stated in their declaration, and the jury found a verdict accordingly. A bill of exceptions was tendered to, and signed by, the court below.

The cause was submitted to the court, without argument.

*Per Curiam.* The certificate of the overseers, rejected at the instance of the executors, was conclusive evidence of the age and ability of the slave, and sufficient to charge the town with his subsequent maintenance as a *pauper.* Whether the slave was duly manumitted, as respected his former owner, was a question between him and the owner, and not between the owner and the town. That certificate would, probably, be sufficient evidence of manumission, to conclude the owner, but the town have no further concern with that question, after having given the certificate required by law, and which the statute renders conclusive to exonerate the owner.

Judgment reversed.